**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

REGINALD DEVORE CLINTON,    )
                                  )
              Petitioner,    )
                                  )
              v.             )         1:17CV794
                                  )
ERIC A. HOOKS,            )
                                  )
              Respondent.    )

### MEMORANDUM OPINION, ORDER, AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "Petition"). (Docket Entry 1.) Respondent has moved for summary judgment. (Docket Entries 4, 5.) For the reasons that follow, the Court should grant Respondent's Motion for Summary Judgment.

## I. Background

On March 18, 2015, a jury in the Superior Court of Forsyth County found Petitioner guilty of attempt to obtain property by false pretenses in case 12 CRS 58153 (see Docket Entry 1, ¶¶ 1, 2, 5; see also Docket Entry 5-2 at 57, Docket Entry 5-12 at 255-56),[1] whereupon Petitioner pled guilty to habitual felon status in case 13 CRS 138 (see Docket Entry 1, ¶¶ 3, 6; see also Docket Entry 5-2 at 58-61, Docket Entry 5-12 at 259-65), and the trial court

---

[1] The Petition consists of 15 pages of a standard form, followed by seven pages of materials from Petitioner's underlying state criminal cases. (See Docket Entry 1.) This Memorandum Opinion cites to the standard form portion of the Petition by paragraph and to the remainder of the Petition by the page number in the footer appended to those materials at the time of their docketing in the CM/ECF system. Respondent also attached to his brief in support of his instant Motion documents from Petitioner's state criminal proceedings (see Docket Entries 5-2 to 5-12), the authenticity of which Petitioner has not contested (see Docket Entries 7, 8). This Memorandum Opinion cites to those items by the page number in their CM/ECF footers.

sentenced Petitioner to 103 to 136 months in prison (see Docket Entry 1, ¶ 3; see also Docket Entry 5-2 at 64-66).

Petitioner appealed to the North Carolina Court of Appeals, and received appointed appellate counsel. (See Docket Entry 1, ¶¶ 8, 9, 16(e); Docket Entry 5-2 at 67-68.) Petitioner's appellate counsel submitted a brief under Anders v. California, 386 U.S. 738 (1967) (Docket Entry 5-3), deeming himself "unable to identify an issue with sufficient merit to support a meaningful argument for relief on appeal" (id. at 11), and "request[ing] [the Court of Appeals] to conduct a full examination of the record on appeal for possible prejudicial error and to determine whether [Petitioner's appellate counsel] overlooked any justiciable issue" (id.). Petitioner then submitted a pro se brief asserting multiple claims of ineffective assistance of trial counsel. (Docket Entry 5-4). The North Carolina Court of Appeals "fully examined the record to determine whether any issues of arguable merit exist[ed,]" did not "find any possible prejudicial error[,] and conclude[d] that [Petitioner's] appeal [wa]s wholly frivolous," State v. Clinton, No. COA15-1105, 789 S.E.2d 568 (table), 2016 WL 3395521, at *2 (June 21, 2016) (unpublished). The Court of Appeals additionally dismissed Petitioner's ineffective assistance "claims without prejudice to [Petitioner's] right to raise them in a motion for appropriate relief [("MAR")] in the trial court," id. Petitioner thereafter neither sought discretionary review in the North Carolina Supreme Court (see Docket Entry 1, ¶ 9(g)), nor petitioned

the United States Supreme Court for a writ of certiorari (see id., ¶ 9(h).

Next, Petitioner filed a MAR with the Forsyth County Superior Court, asserting claims of ineffective assistance against his pretrial counsel, his trial counsel, and his appellate counsel. (Docket Entries 5-6, 5-7.)[2]  The trial court denied Petitioner's MAR, ruling that "[Petitioner] was in a position to adequately raise [on direct appeal] the[] issues and perhaps other grounds underlying [Petitioner's MAR] but did not do so" and, alternatively that "any such grounds or issues, if so raised, were previously determined upon the merits in such proceedings." (Docket Entry 1 at 21.)  The North Carolina Court of Appeals denied Petitioner's subsequent request for certiorari review of the denial of his MAR (id. at 22).

Petitioner then instituted this action via his Petition. (Docket Entry 1.)  Thereafter, Respondent filed the instant Motion and Supporting Brief (Docket Entries 4, 5), as to which Petitioner responded in opposition (Docket Entries 7, 8), and moved for appointment of counsel (Docket Entry 9).

## II. Facts

On direct appeal, the North Carolina Court of Appeals summarized the trial evidence as follows:

> The [s]tate's evidence at trial tended to show that on 12 August 2012, Mary Leigh was working as a customer service manager at a Food Lion located in Winston-Salem, North

---

[2] On September 23, 2014, the trial court granted Petitioner's motion to withdraw his pretrial counsel, and appointed Petitioner's trial counsel. (See Docket Entry 5-6 at 25-30, Docket Entry 5-7 at 1-20.)

Carolina. That afternoon,[Petitioner], dressed in a purple suit, approached the customer service counter and attempted to cash a check worth $499.31 payable to "Reginald Clinton." The check was issued by Wachovia Bank and listed Atlantic Coast Dining as the account holder. [Petitioner] provided Ms. Leigh with a photo identification card in the name of Reginald Clinton. Ms. Leigh noticed that the numbers on the top and bottom of the check did not match. Believing the check to be fraudulent, she called the police.

Shortly after 4:00 p.m. on 12 August 2012, Officer K.J. Neff with the Winston-Salem Police Department received a report of an individual attempting to cash a fraudulent check at a Food Lion. When Officer Neff arrived at the Food Lion, [Petitioner] was still in the store. Officer Neff spoke with [Petitioner], who told him the Food Lion employees were profiling him, and that the check was a valid payroll check for work he did for Tyson Foods issued to him through Samaritan Ministries. While Officer Neff was making phone calls in order to verify the authenticity of the check, [Petitioner] exited the store, leaving the check and photo identification card behind. Officer Neff obtained [Petitioner's] phone number from the records of the Winston-Salem Police Department and called [Petitioner]. However, other than a brief telephone conversation informing [Petitioner] that he had his identification card, Officer Neff was unable to speak further with [Petitioner].

During his investigation, Officer Neff discovered that the account number on the check belonged to the Evangelical Holiness and Missionary Association and not to Atlantic Coast Dining as the check indicated. The Evangelical Association informed Officer Neff that [Petitioner] was not associated with the church and that there was no reason for [Petitioner] to have a check with the church's account number on it. Officer Neff also spoke with the Assistant Director of Samaritan Ministries, who told Officer Neff that he did not know [Petitioner] and that [Petitioner] never worked for Samaritan Ministries. At trial, Officer Neff testified that the address listed for "Reginald Clinton" did not exist in Winston-Salem and did not match the address on the photo identification card or the address on file with the police department.

[Petitioner] testified in his defense that he did not attempt to cash a check at the Food Lion, did not own a purple suit, and had never seen Officer Neff or Ms. Leigh before "in [his] life." [Petitioner] further testified that his son had access to his photo identification card

and the capability of making false checks on the computer.

Clinton, 2016 WL 3395521, at *1-2.

### III.  Grounds for Relief

Petitioner presents three grounds for habeas relief.  (See Docket Entry 1, ¶ 12.)  Specifically, he alleges:

1) ineffective assistance of pretrial counsel in that pretrial counsel (A) "failed to meet with Petitioner to discuss the case" (id., ¶ 12 (GROUND ONE)(a)); (B) "fail[ed] to return multiple calls from Petitioner resulting in loss of [the] state's pre-indictment plea offer of 12-24 mon[ths]" ("2012 Plea Offer") (id.); and (C) "failed to offer Petitioner's March 25, 2013 plea offer from [the] state with [a] sentence recommendation in [the] mitigated [range]" ("2013 Plea Offer") (id.);

2) ineffective assistance of trial counsel in that trial counsel (A) "failed to investigate Petitioner's case" (id., ¶ 12 (GROUND TWO)(a)); (B) "failed to prepare and consult with Petitioner on trial strategy" (id.); (C) "provided erroneous advice to Petitioner" (id.); (D) knowingly withheld evidence favorable to Petitioner" (id.); and (E) "failed to properly examine witnesses after Petitioner repeatedly instructed [his trial counsel] to do so" (id.); and

3) ineffective assistance of appellate counsel in that appellate counsel (A) "failed to file the agreed upon proposed record of appeal" (id., ¶ 12, (GROUND THREE)(a)); (B) filed a brief under Anders v. California, 386 U.S. 738 (1967), "against Petitioner's wishes and after repeated letters from Petitioner

-5-

instructing [appellate] counsel not to file [an] [_Anders_] brief"
(_id._); and (C) "violated Petitioner's right to assist Petitioner in
basic functions of a criminal proceeding" (_id._).

## IV. Habeas Standards

The Court "shall entertain an application for a writ of habeas
corpus in behalf of a person in custody pursuant to the judgment of
a State court only on the ground that he is in custody in violation
of the Constitution or laws or treaties of the United States." 28
U.S.C. § 2254(a). Further, "[b]efore [the] [C]ourt may grant
habeas relief to a state prisoner, the prisoner must exhaust his
remedies in state court. In other words, the state prisoner must
give the state courts an opportunity to act on his claims before he
presents those claims to [this] [C]ourt in a habeas petition. The
exhaustion doctrine . . . is now codified at 28 U.S.C.
§ 2254(b)(1)." _O'Sullivan v. Boerckel_, 526 U.S. 838, 842 (1999);
_see also_ 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to
have waived the exhaustion requirement . . . unless the State,
through counsel, expressly waives the requirement.").

## V. Discussion

A. Standard of Review

Ordinarily, when a petitioner has exhausted state remedies,
this Court must apply a highly deferential standard of review in
connection with habeas claims "adjudicated on the merits in [s]tate
court proceedings," 28 U.S.C. § 2254(d). Under such circumstances,
the Court may not grant relief unless a state court decision on the
merits "was contrary to, or involved an unreasonable application of

clearly established Federal law, as determined by the Supreme Court of the United States; or . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Id. However, as explained below, the deferential standard of review under Section 2254(d) does not apply in this case, because Petitioner's ineffective assistance claims have not been "adjudicated on the merits in [s]tate court proceedings," id.

As discussed above, the Court of Appeals dismissed Petitioner's ineffective assistance "claims without prejudice to [Petitioner's] right to raise them in a [MAR] in the trial court," Clinton, 2016 WL 3395521, at *2 (emphasis added). In his MAR, Petitioner raised ineffective assistance claims against his pretrial, trial, and appellate counsel. (Docket Entries 5-6, 5-7.) The trial court then denied Petitioner's MAR, ruling that "[Petitioner] was in a position to adequately raise [on direct appeal] the[] issues and perhaps other grounds underlying [Petitioner's MAR] but did not do so" and, alternatively that "any such grounds or issues, if so raised, were previously determined upon the merits in such proceedings." (Docket Entry 1 at 21.) In the petition for a writ of certiorari Petitioner filed with the North Carolina Court of Appeals, he alleged only that the trial court improperly denied his MAR on procedural default grounds and, thus, erroneously failed to consider the merits of his ineffective assistance claims (see Docket Entry 5-8 at 5-12), and did not independently raise any ineffective assistance claims (see id. at

2-14).   The Court of Appeals summarily denied his petition. (Docket Entry 1 at 22.)

In other words, contrary to the MAR court's order, Petitioner did not find himself "in a position to adequately raise" his ineffective assistance claims on direct appeal (Docket Entry 1 at 21), as the Court of Appeals dismissed (without prejudice) as premature the ineffective assistance claims Petitioner raised, see Clinton, 2016 WL 3395521, at *2, and no reasonable basis exists for concluding that the Court of Appeals would have considered the merits of any additional ineffective assistance claims against his pretrial and trial counsel.  Moreover, Petitioner obviously could not have raised his ineffective assistance of appellate counsel claim on direct appeal.  Furthermore, and contrary to the MAR court's order (Docket Entry 1 at 21), none of Petitioner's ineffective assistance claims were considered by the Court of Appeals on the merits, see Clinton, 2016 WL 3395521, at *2.

Subsequently, the Court of Appeals, in ruling on Petitioner's certiorari petition, considered only whether the trial court erred in denying the MAR on procedural grounds, rather than the substance of Petitioner's ineffective assistance claims.  (See Docket Entry 5-8 at 5-12.)  Thus, no state court ever adjudicated Petitioner's ineffective assistance claims on the merits.  Accordingly, no state court adjudication exists to which this Court owes deference under 2254(d), and the Court should consider Petitioner's instant claims under a de novo standard of review.  See Gordon v. Braxton, 780 F.3d 196, 202 (4th Cir. 2015) ("[T]he state court's decision must

qualify as an 'adjudicat[ion] on the merits' to trigger AEDPA deference. If it does not so qualify, review in the federal courts is de novo." (quoting Winston v. Pearson, 683 F.3d 489, 499 (4th Cir. 2012)) (internal citation omitted)); see also Hudson v. Hunt, 235 F.3d 892, 895 (4th Cir. 2000).

B. Merits

1. Ground One - Ineffective Assistance of Pretrial Counsel

In Ground One, Petitioner contends that his pretrial counsel failed him in that counsel (A) "failed to meet with Petitioner to discuss the case" (Docket Entry 1, ¶ 12 (GROUND ONE)(a)); (B) "fail[ed] to return multiple calls from Petitioner resulting in loss of [the] state's [2012 Plea Offer] of 12-24 mon[ths]" (id.); and (C) "failed to offer Petitioner's [2013 Plea Offer] from [the] state with [a] sentence recommendation in [the] mitigated [range]" (id.). All of those contentions fall short.

The Fourth Circuit has described the United States Supreme Court authority governing ineffective assistance claims as follows:

> In order to establish an ineffective assistance of counsel claim . . ., [a petitioner must] establish that his "counsel's representation fell below an objective standard of reasonableness," measured by the "prevailing professional norms," [Strickland v. Washington, 466 U.S. 668, 688 (1984)], and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "Unless a [petitioner] makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 687.

> In determining whether counsel's performance was deficient, "[i]t is all too tempting for a [petitioner] to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved

-9-

unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. Hence, "court[s] must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . [and] that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks omitted).

Similarly, in evaluating whether [a petitioner] has shown actual prejudice from any such deficient performance, it is insufficient for the [petitioner] "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." Id. at 693. Rather, a "reasonable probability" that the result would have been different requires "a probability sufficient to undermine confidence in the outcome." Id. at 694. When challenging a conviction, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

Fisher v. Lee, 215 F.3d 438, 446-47 (4th Cir. 2000) (internal parallel citations omitted). Moreover, "[s]urmounting *Strickland*'s high bar is never an easy task. . . . Even under de novo review, the standard for judging counsel's representation is a most deferential one." Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal quotation marks omitted).

Regarding Petitioner's first ineffective assistance sub-claim against his pretrial counsel, Petitioner alleges that counsel admitted at the hearing on Petitioner's motion to withdraw counsel that, in the two years since his appointment as counsel, he had met with Petitioner on only one occasion. (See Docket Entry 8 at 4 (citing Docket Entry 5-7 at 9).) Moreover, Petitioner asserts that his pretrial "counsel was removed by the [trial] court for his ineffectiveness." (Id.)

As an initial matter, the trial court did not remove pretrial counsel for "ineffectiveness," but rather because Petitioner indicated he did not wish to remain represented by pretrial counsel going forward. (See Docket Entry 5-7 at 15-16.) Furthermore, to the extent Petitioner alleges that pretrial counsel's alleged failure to communicate with Petitioner during the pretrial period constitutes an independent ground of ineffective assistance, such a claim fails, as Petitioner "has provided 'no explanation how additional meetings with his counsel, or longer meetings with his counsel, would have led to new or better theories of advocacy or otherwise would have created a reasonable probability of a different outcome,'" Lenz v. Washington, 444 F.3d 295, 303 (4th Cir. 2006) (quoting Hill v. Mitchell, 400 F.3d 308, 325 (6th Cir. 2005)) (internal quotation marks omitted). As a result, Petitioner has not shown prejudice under Strickland's second prong. See Bowling v. Parker, 344 F.3d 487, 506 (6th Cir. 2003) ("[T]he mere fact that counsel spent little time with [petitioner] is not enough under Strickland, without evidence of prejudice or other defects.").[3]

In Petitioner's second and third ineffective assistance sub-claims against pretrial counsel, Petitioner asserts that his pretrial counsel "fail[ed] to return multiple calls from Petitioner resulting in loss of [the] state's [2012 Plea Offer] of 12-24

---

[3] Moreover, to the extent Petitioner ties his pretrial counsel's alleged failure to communicate and meet with Petitioner to purported loss of opportunity to accept favorable plea offers, for the reasons described below, that argument also fails.

mon[ths,]" and "failed to offer Petitioner's [2013 Plea Offer] from [the] state with [a] sentence recommendation in [the] mitigated [range]." (Docket Entry 1, ¶ 12 (GROUND ONE)(a); <u>see also</u> Docket Entry 8-1 at 1 (copy of 2013 Plea Offer).) Petitioner maintains that he "was prejudiced by the loss of the opportunity to accept or deny the pleas[,] . . . [because] the loss of the opportunity caused the imposition of a more severe sentence." (Docket Entry 8 at 5.)

"[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." <u>Missouri v. Frye</u>, 566 U.S. 134, 145 (2012). However, even if a petitioner establishes that his counsel failed to communicate a plea offer, the petitioner must still establish prejudice. In other words:

> [A] [petitioner] must show that, but for the ineffective [assistance] of counsel, there is a reasonable probability that . . . <u>the [petitioner] would have accepted the plea</u>[,] [that] the prosecution would not have <u>withdrawn</u> it in light of intervening circumstances[], that the [trial] court would have accepted its terms, and that the conviction and sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

<u>Lafler v. Cooper</u>, 566 U.S. 156, 164 (2012) (emphasis added).

Here, the record belies Petitioner's contention that his pretrial counsel failed him with regard to both the 2012 Plea Offer and the 2013 Plea Offer. At the September 23, 2014, hearing on Petitioner's motion to withdraw pretrial counsel, the following

colloquoy took place between Petitioner, pretrial counsel, and the trial court:

> PETITIONER: I was offered a plea back in November of [20]12 . . . . And <u>if I didn't take the plea before Christmas, I would get the habitual felon</u>.
>
> . . .
>
> [Pretrial counsel] said he notified me that that's what the [district attorney] had intended to do, and he did not notify me of that.
>
> TRIAL COURT: Well, then <u>when did you find out about it</u>?
>
> PETITIONER: <u>When I got in the courtroom</u>.
>
> TRIAL COURT: When?
>
> PETITIONER: I don't even remember when. When – there were – <u>in November</u>.
>
> TRIAL COURT: Of 2013?
>
> PETITIONER: <u>Of 2012</u>.
>
> . . .
>
> COUNSEL: Your Honor, this was originally in district court, in preliminary court –
>
> . . .
>
> – where [a district attorney] made a prior-to-indictment offer that [Petitioner] plead guilty to attempt to obtain property by false pretenses, Class H. The [s]tate would agree to an active sentence at the lowest end of the mitigated range. This would be a 12- to 24-month active [sentence] as [Petitioner] appears to be a Record Level 6 for felony sentencing purposes. Further, the [s]tate would agree not to pursue a habitual felon indictment against [Petitioner].
>
> . . .

```
TRIAL COURT:    Okay. That's why it's not in the file –
                because it was before the case even made
                it to superior court.  Okay.

                But you chose not to accept that?

PETITIONER:     Right.
```

(Docket Entry 5-7 at 2-6 (emphasis added).)

On the first day of trial, March 16, 2015, during a hearing on Petitioner's motion to reduce bond, Petitioner made the following statements to the trial court:

> [T]he first time I had a court date was on [September 17, 2012] or something like that.  And at that time, my very first appearance in the courtroom, I asked for an attorney.  They give me an attorney.  And on my next court date, which was September of the same year, 2012, I met [pretrial counsel] in the courtroom.
>
> On that day, there was an offer from the [district attorney] – which was not this particular [district attorney], I might add – of an active sentence of 12 to 24 months, and if I didn't take it before Christmas, then I would be charged as a habitual felon again.  That was the plea.  I rejected the plea.

(Docket Entry 5-12 at 50-51 (emphasis added); see also Docket Entry 5-8 at 26 (reflecting Petitioner's statement in his MAR that, "[a]fter consulting with family and [his] employer [regarding whether to accept the 2012 Plea Offer,] [Petitioner] attemp[ted] to contact [pretrial] counsel multi[p]le[] times, ways and days by leaving urgent messages with counsel's secretary[,] [] by appearing in-person at counsel's office on three consecutive days[,] [and by] le[aving] repeated messages on counsel's voice service[,] [and that] counsel failed to return [Petitioner's] calls[,]" but neglecting to contend that Petitioner wished to accept the 2012 Plea Offer).)

The above-quoted discussions establish that Petitioner's pretrial counsel in fact notified Petitioner of the 2012 Plea Offer in a courtroom in either <u>September or November 2012</u>, <u>prior</u> to the expiration of that offer at the end of December 2012, and that Petitioner <u>rejected</u> the 2012 Plea Offer. Thus, Petitioner has not "show[n] that, but for the ineffective [assistance] of counsel, there [wa]s a reasonable probability that . . . <u>the [petitioner] would have accepted the plea</u>," <u>Lafler</u>, 566 U.S. at 164 (emphasis added).

Concerning the 2013 Plea Offer, the following discussion took place between Petitioner and the trial court at the September 23, 2014, hearing on Petitioner's motion to withdraw pretrial counsel:

TRIAL COURT:     [T]his is clocked in March 1st of 2013 . . . . [I]t says there's a letter from [a district attorney] who is not the [district attorney] who is here today. But the [former district attorney] had signed this that at the first setting of March 25, 2013, if you entered a plea of guilty and admit[ted] your status as a habitual felon, they would . . . recommend a sentence in the mitigated range.

PETITIONER:     I've never heard of that one.

. . .

                        I've never heard of that ever.

. . .

TRIAL COURT:     [T]he first plea offer in superior court was the one that I talked about a few moments ago – that it would be habitual felon in the mitigated range. Okay.

                        <u>But I gather from what you have said that you wanted a trial in this case all along</u>?

-15-

PETITIONER:     Yes.

(Docket Entry 5-7 at 4-6 (emphasis added).)    Thus, even if
Petitioner could establish that pretrial counsel never communicated
the 2013 Plea Offer to him, Petitioner's ineffective assistance
claim still fails because, as the language emphasized above makes
clear, he has not shown that "there [wa]s a reasonable probability
that . . . [he] would have accepted the plea," Lafler, 566 U.S. at
164 (emphasis added).

        In sum, Petitioner's first ground for relief fails as a matter
of law.

2. Ground Two - Ineffective Assistance of Trial Counsel

        Via Ground Two, Petitioner alleges that his trial counsel
provided ineffective assistance in that counsel (A) "failed to
investigate Petitioner's case" (Docket Entry 1, ¶ 12 (GROUND
TWO)(a)); (B) "failed to prepare and consult with Petitioner on
trial strategy" (id.); (C) "provided erroneous advice to
Petitioner" (id.); (D) "knowingly withheld evidence favorable to
Petitioner" (id.); and (E) "failed to properly examine witnesses
after Petitioner repeatedly instructed [his trial counsel] to do
so" (id.)[4]

        In regards to ineffective assistance of trial counsel sub-
claim (A), Petitioner maintains that his trial counsel "failed to

_____

        [4] Petitioner did not provide any facts in support of his contention that
trial counsel "knowingly withheld evidence favorable to Petitioner" (Docket Entry
1, ¶ 12 (GROUND TWO)(a); see also Docket Entry 8), and, thus, that contention
fails as conclusory, see Cano v. United States, Nos. 1:05CR354-4, 1:09CV321, 2009
WL 3526564, at *3 (M.D.N.C. Oct. 22, 2009) (unpublished), recommendation adopted,
slip op. (M.D.N.C. Dec. 29, 2009); see also Nickerson v. Lee, 971 F.2d 1125, 1136
(4th Cir. 1992), abrogation on other grounds recognized, Yeatts v. Angelone, 166
F.3d 255, 266 n.4 (4th Cir. 1999).

                                -16-

make any attempt to contact, locate, or interview" three witnesses "who could verify that Petitioner was in a church service [on the day of the underlying offense] from 4 pm until after 7 pm." (Docket Entry 8 at 7.)  Moreover, Petitioner asserts that trial counsel "failed to go interview or investigate Petitioner's son, who was in custody with multiple pending obtaining property by false pretense charges as well as two identity theft charges." (Id.)

Concerning the three purported alibi witnesses, Petitioner has not even provided the names of the individuals, much less produced affidavits or other statements from the individuals attesting to Petitioner's whereabouts on the day of the offense in question (or provided a reasonable explanation as to why, given that Petitioner remained out on bond pending his trial date, he could not have procured their attendance at trial).  Moreover, Petitioner has not identified the church at which he attended the service, or otherwise explained how these unnamed individuals could "verify" that Petitioner attended church from 4:00 p.m. until after 7:00 p.m. on the day in question.  Put another way, Petitioner "has provided only conclusory allegations which meet neither the error nor the prejudice prong of the Strickland analysis."  Cano v. United States, Nos. 1:05CR354-4, 1:09CV321, 2009 WL 3526564, at *3 (M.D.N.C. Oct. 22, 2009) (unpublished), recommendation adopted, slip op. (M.D.N.C. Dec. 29, 2009); see also Nickerson v. Lee, 971 F.2d 1125, 1136 (4th Cir. 1992) ("In order to obtain an evidentiary hearing on an ineffective assistance claim — or, for that matter,

on any claim — a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing."), <u>abrogation on other grounds recognized</u>, <u>Yeatts v. Angelone</u>, 166 F.3d 255, 266 n.4 (4th Cir. 1999).

As to the alleged failure of Petitioner's trial counsel to interview Petitioner's son in custody, Petitioner has not shown the requisite prejudice under <u>Strickland</u>. As the trial court noted during the hearing on September 23, 2014, on Petitioner's motion to withdraw pretrial counsel, Petitioner could not compel his son to testify against his own interests:

> TRIAL COURT:    [Y]ou're wanting to present some evidence that it's your son that did it?
>
> PETITIONER:     Absolutely.
>
> TRIAL COURT:    Okay.  Do you realize that even if [pretrial counsel] or any attorney issued a subpoena or had your son brought from jail here, he would not have to testify?
>
> PETITIONER:     Wouldn't matter to me.  . . .
>
> TRIAL COURT:    Do you realize he could not be made to testify?
>
> PETITIONER:     I can't make him testify.  I can't make him testify.
>
> TRIAL COURT:    So – but is that what you're wanting?
>
> PETITIONER:     What – I want something brought to the front to show that what I'm saying is true.

(Docket Entry 5-7 at 7-8.)  Nor has Petitioner shown that his son would have testified at all, let alone favorably to Petitioner.  In sum, Petitioner has failed to demonstrate that his trial counsel's

failure to interview Petitioner's son would have had any impact on the outcome of Petitioner's case.

Next, Petitioner alleges that his trial counsel "failed to prepare and consult with Petitioner on trial strategy." (Docket Entry 1, ¶ 12 (GROUND TWO)(a).) Beyond reiterating his earlier, meritless contention that his trial counsel provided ineffective assistance by failing to interview alibi witnesses and Petitioner's son, Petitioner merely alleges that trial counsel "made no attempt to formulate a defense at all" and filed only one motion with the trial court. (Docket Entry 8 at 8.) Petitioner has made no attempt to identify the defenses or motions that trial counsel should have pursued. (See Docket Entries 1, 8.) Such "conclusory allegations . . . meet neither the error nor the prejudice prong of the Strickland analysis." Cano, 2009 WL 3526564, at *3; see also Nickerson, 971 F.2d at 1136 ("In order to obtain an evidentiary hearing on an ineffective assistance claim — or, for that matter, on any claim — a habeas petitioner must come forward with some evidence that the claim might have merit. Unsupported, conclusory allegations do not entitle a habeas petitioner to an evidentiary hearing.").

In Petitioner's third ineffective assistance sub-claim against trial counsel, Petitioner argues that "[c]ounsel provided erroneous advi[c]e when counsel told Petitioner on the second day of trial, that the only way for Petitioner to establish his side of the story was to take the stand and testify on his own behalf." (Docket Entry 8 at 9.) Petitioner additionally contends that he felt so

dissatisfied "with counsel's performance and refusal to question state witnesses that[] he reluctantly agree[d] to testify." (Id.)

As an initial matter, Petitioner has failed to show, given that he could not compel his son to testify against his own interests, how Petitioner could possibly have presented his theory that his son committed the offense in question to the jury absent his own testimony. Indeed, trial counsel elicited testimony that Petitioner's son had access to Petitioner's identification card and Wells Fargo bank account (see Docket Entry 5-12 at 160), and successfully argued, over the state's objection, for the admission of Petitioner's testimony that, prior to the underlying offense, his son owned a computer containing check writing software (see id. at 160-68).

Moreover, the trial transcript belies Petitioner's contention that he felt reluctance about testifying in his own behalf, or that he based such a decision on dissatisfaction with his trial counsel:

> TRIAL COURT: You understand in this case – you've already had a chance to speak to your attorneys about that you have an absolute right to testify or not testify in your case? Do you understand that, sir?
>
> PETITIONER: I do.
>
> TRIAL COURT: The decision about whether or not to testify should not be made by your lawyer. Your lawyer is a very competent lawyer, and he . . . should give you good advice, and you should listen to your lawyer, but when it comes to whether or not you want to testify, that is a decision that you should make on your own, considering all the advice that your attorney gives you; do you understand that, sir?

| | |
|---|---|
| PETITIONER: | <u>I do</u>. |
| TRIAL COURT: | <u>And you understand that the decision is yours and yours alone</u>? |
| PETITIONER: | <u>I do</u>. |
| TRIAL COURT: | And if you decide not to testify, you understand I will instruct the jury at that time they are not to consider that in any way regarding their decision if you do not testify?  Do you understand that? |
| PETITIONER: | I understand. |
| TRIAL COURT: | And what is your decision with regards to whether or not you wish to testify? |
| PETITIONER: | <u>I am going to testify on my behalf.  It's my life</u>. |

(Docket Entry 5-12 at 151-52 (emphasis added).)

Petitioner additionally contends that trial counsel "failed to properly examine witnesses after Petitioner repeatedly instructed [his trial counsel] to do so."  (Docket Entry 1, ¶ 12 (GROUND TWO)(a).)  In particular, Petitioner alleges that trial counsel "failed to offer any expla[]nation to [Petitioner]" as to why trial counsel would not question Ms. Leigh or Officer Neff regarding the absence of any "surveillance footage and why [Petitioner's identification] card was not introduced" into evidence.  (Docket Entry 8 at 10.)[5]

----

[5] Petitioner asserts that trial counsel "led Petitioner to believe that [his identification card] and [the] surveillance footage w[ere] in evidence when counsel knew beforehand that there was no such evidence."  (Docket Entry 8 at 10 (citing Docket Entry 5-12 at 219-20).)  Petitioner further contends that he "refuse[d] to allow the trial to proceed without addressing the court concerning his displeasure with counsel's refusal to question state witnesses to discredit their testimony."  (<u>Id.</u>)  However, the transcript pages relied on by Petitioner neither support Petitioner's assertion that trial counsel "led Petitioner to believe that [his identification card] and [the] surveillance footage w[ere] in
(continued...)

In a memorandum Petitioner's trial counsel sent to Petitioner's appellate counsel, trial counsel provided a sound explanation as to why he did not question Ms. Leigh or Officer Neff about the lack of surveillance footage or the whereabouts of Petitioner's identification card:

> There was no surveillance video preserved (<u>the officer did not attempt to get it before the system overwrote the footage</u>, but there was no testimony about that). While the officer retained [Petitioner's identification] card initially[,] it also was not produced at trial. Just like with the surveillance footage[,] there was no explanation of why it was not produced, but <u>I think the officer told me that the department sent the card to the [Department of Motor Vehicles] when [Petitioner] did not come pick it up</u>.
>
> . . .
>
> [Petitioner] was constantly after me to ask the witnesses why there was no surveillance footage and why [Petitioner's identification] card was not introduced. <u>I thought it was a bad idea since the explanations would have seemed reasonable to the jury. Since the failure to introduce those items was not explained, I felt we were in a stronger position to argue to the jury that it should consider the lack of any photographic evidence to corroborate the identification testimony</u>.

(Docket Entry 8-1 at 5-6 (emphasis added).)

Indeed, trial counsel stated in opening:

> Now, Food Lion is a typical retail location. On these days, most retail locations we're all familiar with, have surveillance systems; cameras watching everything the customers and employees do. Yet, <u>there's no video, no</u>

---

[5](...continued)
evidence," nor reveal any expressions by Petitioner of his "displeasure with counsel's refusal to question state witnesses to discredit their testimony" (Docket Entry 8 at 10). (<u>See</u> Docket Entry 5-12 at 219-20). Moreover, the Court should view with skepticism Petitioner's contention that the trial transcript misquoted Petitioner as saying "he will do it" instead of "he won't do it" in response to the trial court's statement that Petitioner's trial counsel, rather than Petitioner, must make the legal arguments in the case. (<u>See</u> Docket Entry 8 at 12; <u>see also</u> Docket Entry 5-12 at 220.)

still pictures, no hard physical evidence, that
[Petitioner] was in the store that day.

(Docket Entry 5-12 at 98 (emphasis added).)  Trial counsel then

argued in closing:

> May it please the Court, counsel, members of the jury,
> the key to any credible story is corroboration.
> [Petitioner] was the one in the Food Lion that day.  Why
> aren't there pictures from the surveillance cameras?  Go
> out in public to the mall, to the store, an office
> building, the courthouse and our every move is recorded
> on camera.  There was a camera system in the Food Lion,
> so why isn't there a picture of [Petitioner] in the Food
> Lion?  Because he wasn't there.
>
> Where's the identification card that was presented?
> According to Officer Neff, the police department held on
> to the [identification card].  If the [identification]
> card is not presented here in the court, how are you
> supposed to know it was his identification card that was
> used?  The check was seized, but where's the
> [identification card]?  That's something you should talk
> about in the jury room.

(Docket Entry 5-12 at 222-23 (emphasis added).)  Under those

circumstances, Petitioner has shown neither deficient performance

nor prejudice with regard to trial counsel's handling of witnesses

Leigh and Neff.

Simply put, Petitioner's second ground for relief falls short.

3. Ground Three - Ineffective Assistance of Appellate Counsel

In Petitioner's third and final ground for relief, he alleges

that appellate counsel provided deficient representation in that

counsel (A) "failed to file the agreed upon proposed record of

appeal" (Docket Entry 1, ¶ 12 (GROUND THREE)(a); (B) "filed [an]

[Anders] brief against Petitioner's wishes and after repeated

letters from Petitioner instructing [appellate] counsel not to file

[an] [Anders] brief" (id.); and (C) "violated Petitioner's right to

assist Petitioner in basic functions of a criminal proceeding" (id.).[6]

In order to prove ineffective assistance of appellate counsel, Petitioner must satisfy the standard set forth in Strickland. See Smith v. Murray, 477 U.S. 527, 535–36 (1986) (applying Strickland standard to claim of appellate ineffective assistance); Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (en banc) (same). More specifically, Petitioner must show that (1) his appellate counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance prejudiced Petitioner, i.e., a reasonable probability that, but for his appellate counsel's unprofessional errors, the result of the proceeding would have changed. See Strickland, 466 U.S. at 678–88, 694. Consistent with the "deferential" nature of the Strickland standard, Harrington, 562 U.S. at 105, appellate counsel need not raise every non-frivolous issue; to the contrary, forsaking reasonably perceived weaker appeal issues to focus on a small number of arguably stronger ones constitutes a mark of effective advocacy. Jones v. Barnes, 463 U.S. 745, 750–54 (1983); Bell, 236 F.3d at

_____

[6] Although Petitioner alleged that his appellate counsel failed to file the agreed upon proposed record of appeal" (Docket Entry 1, ¶ 12 (GROUND THREE)(a)), and referenced in his brief opposing summary judgment an "Attached Proposed Record of Appeal" (Docket Entry 8 at 12 (emphasis added)), the document attached to his brief actually constitutes "Defendant's Proposed Issues on Appeal" (Docket Entry 8-1 at 7 (emphasis added)) which appellate counsel filed as part of the record on appeal (see Docket Entry 5-2 at 72). Moreover, although Petitioner contends that appellate counsel "violated Petitioner's right to assist Petitioner in basic functions of a criminal proceeding" (Docket Entry 1, ¶ 12 (GROUND THREE)(a)), in support of that claim, Petitioner again alleged that appellate counsel failed "to file the agreed upon record of appeal" and filed an "Anders brief when non-frivolous issues existed" (Docket Entry 8 at 13). Thus, all three of Petitioner's sub-claims of ineffective assistance of appellate counsel boil down to Petitioner's opposition to appellate counsel's filing of a brief under Anders.

164.  Moreover, "reviewing courts must accord appellate counsel the
presumption that he [or she] decided which issues were most likely
to afford relief on appeal."  *Bell*, 236 F.3d at 164 (internal
quotation marks omitted); *see also* Evans v. Thompson, 881 F.2d 117,
124 (4th Cir. 1989) (declaring that counsel pursued sound strategy
when "he determined what he believed to be [the] petitioner's most
viable arguments and raised them on appeal").

Here, Petitioner's appellate counsel notified Petitioner via
letter that, after counsel had "reviewed] the transcript of the
proceedings, the superior court file, and relevant law, [he was]
unable to identify any issue that will support a reversal on direct
appeal of the judgment and sentence in [Petitioner's] case[,]" and
that he "ha[d] filed a brief in accordance with *Anders*[] and *State
v. Kinch*, 314 N.C. 99, 331 S.E.2d 665 (1985), asking the North
Carolina  Court  of  Appeals  to  review  the  transcript  of
[Petitioner's]  trial  and  the  record  on  appeal  on  its  own  to
determine  whether  [counsel]  has  overlooked  anything  in
[Petitioner's] case."  (Docket Entry 5-3 at 21.)  Counsel further
explained that he "believe[d] that [Petitioner] would be better
served by a full review by the Court of Appeals than by an attempt
on [counsel's] part to present an argument that has no meaningful
chance of success."  (Id. at 22.)

In the face of that explanation from Petitioner's appellate
counsel, Petitioner conclusorily argues that "non-frivolous issues
existed"  among  those  listed  in  Petitioner's  proposed  issues  on
appeal that appellate counsel should have raised on direct appeal.

(Docket Entry 8 at 13.) Petitioner has neither made an attempt to identify which issues he believed his counsel should have raised, nor provided any facts or legal arguments to show a reasonable probability that such issues would have succeeded on appeal. (See Docket Entries 1, 8.) Under such circumstances, Petitioner has not overcome the presumption that his appellate counsel "decided which issues were most likely to afford relief on appeal." Bell, 236 F.3d at 164 (internal quotation marks omitted).

In short, the Court should reject Petitioner's third ground for relief.[7]

## VI. Conclusion

All of Petitioner's claims lack merit.

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 4) be granted, that the Petition (Docket Entry 1) be denied, and that Judgment be entered dismissing this action without issuance of a certificate of appealability.

**IT IS ORDERED** that Petitioner's Motion for Appointment of Counsel (Docket Entry 9) is **DENIED**.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

July 10, 2018

---

[7] In view of the recommendation that Court deny the Petition, no extraordinary circumstances exist warranting appointment of counsel for Petitioner (see Docket Entry 9). See Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated in part on other grounds, Mallard v. United States Dist. Ct. for S.D. Iowa, 490 U.S. 296 (1989).